**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| ALANA L. GOODWIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:07cv426-TFM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her applications for supplemental security income (SSI) benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq.*, Alana L. Goodwin ("Goodwin") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.   ADMINISTRATIVE FINDINGS

Goodwin, age 33 at the time of the hearing, received her GED. Goodwin does not

have any past relevant work, and did not engage in substantial gainful work activity at any time relevant to her application period. Goodwin's attorney requested her original onset date of June 10, 1992 be amended to her filing date of April 11, 2005.[1] Her disability application claims mental problems are the basis of her disability.

The ALJ found Goodwin was impaired by alcoholic dependence and schizoaffective disorder, bi-polar type; personality disorder, history of cocaine, cannabis, amphetamine, opioid, and anxiolytic abuse; and borderline intellectual functioning. This combination of impairments meets the requirements of Section 12.09 of the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4, and the ALJ found Goodwin disabled, and cited alcoholism as a "contributing factor material to the finding of disability."[2] The ALJ noted Goodwin did not allege any physical impairments.[3] The ALJ continued to find if Goodwin stopped using alcohol, she would not be subject to any impairment, or combination of impairments, that meet or equal the requirements of the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.[4]

After hearing testimony from a medical expert, a vocational expert, and reviewing the record, the ALJ decided Goodwin was not credible, and able to perform a full range of work at the light exertional level. The ALJ found Goodwin could perform several jobs identified

---

[1] R. at 160.

[2] R. at 23 at ¶ 2; 24 at ¶ 12.

[3] R. at 23 at ¶ 2.

[4] R. at 24 at ¶¶ 3, 5, 11.

by the vocational expert as within her abilities if she stopped drinking. These positions include product assembler, poultry worker/fish cleaner, and electronics worker. The finding that Goodwin was able to perform these jobs led the ALJ to conclude she was not entitled to disability benefits under the Act.

### III.  ISSUES

Goodwin raises two issues for judicial review:[5]

1. Whether the ALJ erred in finding Goodwin's drug or alcohol use relevant to his decision.

2. Whether the ALJ erred in discounting the opinion of Goodwin's treating psychiatrist.

### IV.  DISCUSSION

**1.     The ALJ followed applicable law in considering Goodwin's alcohol use as relevant to this decision.**

Goodwin argues the ALJ committed error by finding Goodwin's continued use of alcohol during her application period was relevant to the disability determination. The Commissioner responds the facts established in the record and during the administrative hearing supported the ALJ's decision.

Goodwin's brief suggests the ALJ posed "loaded" questions to the medical expert in an attempt to skew his testimony regarding whether she used alcohol during the application

---

[5] *See* Plaintiff's Brief ("Pl. Br.") at 3 (Doc. #13, filed September 27, 2007) *and* Order filed May 23, 2007 (Doc. #4) (directing Plaintiff to a brief in support of her claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution").

period.  However, Goodwin herself acknowledged using alcohol while in treatment at the Chilton-Shelby Mental Health Center, and during her testimony.[6]  The medical expert, Doug McKeown, stated Goodwin's record indicated "fairly recent alcohol use suggesting at least some continued intermittent problems with substance abuse."[7]  When discussing Goodwin's prognosis, Dr. McKeown stated if Goodwin "were fully compliant with medication and avoidant of any type of substances, including street drugs and alcohol," she could maintain progress in through medication.[8]  Dr. McKeown made these statements without any prompting by the ALJ, and, together with Goodwin's admission, provide ample evidence for the ALJ to find Goodwin used alcohol during the application period.

Goodwin's challenge to the relevance of her alcohol intake ignores the provisions of the Act, and the ALJ's obligation to follow its direction in his disability decisions.  The ALJ explained section 105 of Public Law 104-121 (Contract with America Advancement Act of 1996, "CAAA") required him to find whether alcoholism or drug addiction was a "contributing factor material" to a disability finding.  If these factors are "material," Goodwin is not eligible for benefits.[9]  *See also Doughty v. Apfel*, 245 F.3d 1274, 1278-79 (11th Cir. 2001).  *Doughty* cites an SSA regulation which explains "[T]he key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination

---

[6] R. at 129, 170.

[7] R. at 178-79.

[8] R. at 179-80.

[9] R. at 21, 24.

5

of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol." *Id*. at 1279.[10] Dr. McKeown's unprompted testimony provided support for the ALJ's finding that Goodwin could maintain progress if she abstained from alcohol and/or drug use, and the ALJ distinguished between Goodwin's inability to work due to alcohol dependence and ability to work if she abstained from drinking.[11]

The Court finds substantial evidence which supports the ALJ's finding of non-disability in Goodwin's case, and affirms the administrative finding that she is not disabled under the Act, as amended by the CAAA.

## 2. The ALJ properly evaluated the treating psychiatrist's opinion.

Goodwin argues the ALJ failed to properly evaluate the opinion of her treating psychiatrist, Dr. Joel Julian. The Commissioner responds the ALJ's decision was supported by other opinions and evidence regarding Goodwin's mental status and behavior.

The ALJ decision presented the findings of Dr. Daniel C. Clark, who performed a consultative psychological evaluation of Goodwin in June, 2005. Dr. Clark chronicled Goodwin's history of physical and emotional abuse, drug use, and legal problems. His administration of the Wechsler Adult Intelligence Scale-III placed Goodwin in the borderline

---

[10] Goodwin's argument that even the evaluation by a consulting psychologist found DA &A (drug abuse and alcohol) "not material right now" related to her past behavior and mental symptoms from a medical perspective, and did not purport to address consideration of her claim under the Act. *See* R. at 119.

[11] R. at 23-24.

range of intellectual functioning. Dr. Clark found her "moderately impaired in her ability to understand, remember, and carry out instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting."[12] Dr. Clark also opined Goodwin's impairment would "become *severe* without [her] current medication regimen."[13]

The ALJ decision also presented the findings of Dr. Susan Kotler, a consulting psychologist with Disability Determination Service (DDS). Kotler examined Goodwin in July, 2005, and found she had moderate limitations in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence, or pace.[14] Dr. Kotler's evaluation included extensive notes on Goodwin's history, and regarded the "significant symptoms of disturbed mood, behavior, and thought and perceptual processes" were "somewhat exaggerated and may describe past, rather than current symptoms. . . ."[15] Dr. Kotler also found Goodwin's limitations to be "moderate" on medication, but severe without.[16] Dr. Kotler concluded by finding Goodwin's allegations of mental problems credible, and that her "current functional limitations due to mental symptoms appear to be moderate . . . ."[17] Dr. Kotler completed a Mental Residual Functional Capacity Assessment

---

[12] R. at 19, 106.

[13] R. at 19, 106.

[14] R. at 19, 117.

[15] R. at 119.

[16] R. at 119.

[17] R. at 119.

of Goodwin which identified several areas of moderate limitation, no marked limitation, and guidelines for the work type and environment within Goodwin's abilities.[18]  Dr. Kotler assessment of Goodwin's functional capacity indicated she was able "to complete a regular workday at an acceptable pace and attendance schedule," with limits on attention, concentration, proximity to others, and interaction with the public.[19]

Goodwin's treatment by Dr. Joel Julian took place through the Chilton-Shelby Mental Health Center.  The ALJ decision commented on the relatively brief treatment relationship between Goodwin and Dr. Julian as of the hearing date.[20]  Goodwin's own brief makes reference to a longer term relationship between Goodwin and "the treating team over the prior year."[21]  The treatment notes by Monica Hendricks, MS, reflect Goodwin was compliant with medication with no side effects, but drank alcohol when she felt overwhelmed on at least one occasion.[22]  Hendricks wrote one of Goodwin's treatment goals was to find a job.[23]  Dr. Julian signed an incomplete Mental Residual Functional Capacity Assessment on Goodwin, and found marked limitations in several categories of the summary conclusion portion.  There were no comments elaborating on the summary conclusions in the

---

[18] R. at 121-23.

[19] R. at 123.

[20] R. at 20.

[21] Pl. Br. at 10.

[22] R. at 128, 129,

[23] R. at 137.

functional capacity assessment portion.[24]  The ALJ noted Dr. Julian's failure to complete the entire assessment, and his silence on the issue of Goodwin's continued use of alcohol and its impact on her ability to work.[25]  The ALJ then found Goodwin could perform work within the limitations specified in the Mental Residual Functional Capacity Assessment submitted by Dr. Kotler.[26]

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241, citing *Lewis.* When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam).  Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question.  *See* 20 C.F.R. § 404.1527(d)(1)-(6).  "The weighing of evidence is a function of the factfinder, not of the district court. The question is

---

[24]R. at 154-56.

[25]R. at 22.

[26]R. at 22.

not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

The ALJ found Dr. Julian's evaluation of Goodwin's ability to work inadequate due to the relatively brief treating relationship and Dr. Julian's failure to comment on the impact of alcohol. The nature of the treating relationship is a specified consideration under the regulations cited above, and the Court notes that virtually all of the treatment notes from Chilton-Shelby Mental Health Center were provided by Monica Hendricks or Melanie Morrow, rather than Dr. Julian.[27] The adoption of the Mental Residual Functional Capacity Assessment by Dr. Kotler is sustainable because it is consistent with the opinion of Dr. Clark. Both opinions found Goodwin retained moderately limited work skills if she abstained from alcohol use, while Dr. Julian's was silent on the issue. As stated by the ALJ, this determination is critical under the Act, and an appropriate consideration in the ALJ's decision-making process.[28] *Doughty*, *id*.

The court finds the ALJ did not err in his treatment of Dr. Julian's incomplete opinion of Goodwin's mental functional capacity. The supported, though differing, consulting opinions from Drs. Clark and Kotler provided substantial evidence for the ALJ's decision that Goodwin was capable of work.

## V.  CONCLUSION

---

[27] R. at 127-29; 132, 135, 136-38, 142-43, 151-52.

[28] R. at 23.

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.

Done this 19th day of November, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE